IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| JORGE ANDUJAR AND FRANKLIN PENA BATISTA, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> HUB GROUP TRUCKING INC., <br><br> Defendant. | ) ) ) ) ) ) ) No. 2:24-cv-02296-TLP-cgc ) ) ) ) ) ) |

**ORDER GRANTING MOTION TO DISMISS**

Defendant Hub Group Trucking, Inc. ("Hub Group") moves to dismiss. (ECF No. 48.) Plaintiffs Jorge Andujar, Franklin Pena Batista, and the class of others similarly situated oppose the motion. (ECF No. 51.) For the reasons explained below, the Court **GRANTS** the motion to dismiss.

**BACKGROUND**

Plaintiffs Andujar and Batista, and the others in the class similarly situated to them, sued Hub Group in federal court in New Jersey. They alleged that Hub Group "subject[ed] Plaintiffs and other class members to improper wage withholdings and diversions" and "fail[ed] to pay Plaintiffs and certain class members overtime premium compensation for hours worked over 40 hours during the workweek" in violation of New Jersey labor and wage laws.[1] (ECF No. 1 at PageID 8–9.) Hub Group then moved to transfer the case to the Western District of Tennessee

---

[1] Plaintiffs allege violations of N.J. Stat. Ann. §§ 34:11-4.4 and 34:11-56a(4), which govern wage withholdings and overtime pay.

1

under a forum selection clause between the parties, which the district court in New Jersey granted. (ECF Nos. 9, 28.) Hub Group also moved to dismiss the New Jersey state-law claims, which the New Jersey district court denied as moot when it transferred the case. (ECF Nos. 10, 27.)

Hub Group now moves to dismiss the New Jersey statutory claims for failure to state a claim upon which relief can be granted. It argues that the contract's choice-of-law provision, which specifies Tennessee law, means the New Jersey claims are not cognizable. (ECF No. 48.) Fed. R. Civ. P. 12(b)(6). But Plaintiffs oppose the motion, countering that New Jersey law applies despite the contractual provision. (ECF No. 51.) The issue therefore boils down to choice of law.

## **LEGAL STANDARD**

To survive a motion to dismiss, the plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). When reviewing a motion to dismiss, courts must accept the plaintiff's factual assertions as true and must resolve all reasonable inferences in favor of the plaintiff. *Marchek v. United Servs. Auto. Ass'n*, 118 F.4th 830 (6th Cir. 2024); *Elec. Merch. Sys. LLC v. Gaal*, 58 F.4th 877, 882 (6th Cir. 2023). The court generally restricts its review of the record to the complaint, but it may also consider public records without converting the motion into one for summary judgment. *See Blackwell v. Nocerini*, 123 F.4th 479, 487 (6th Cir. 2024) ("We also allow district courts to take judicial notice of 'public records' without converting a motion to dismiss into a summary-judgment motion." (citation omitted)). And so the Court considers some of the legislative reports and documents that Plaintiffs attached to their opposition to the motion to dismiss here. And the Court considers the employment contracts because the choice-of-law provision within

them is the basis for the motion to dismiss and central to the employment relationship at issue. *See Diei v. Boyd*, 116 F.4th 637, 643 (6th Cir. 2024) ("[A] court considering a Rule 12(b)(6) motion may review exhibits attached to the complaint as well as items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein.").[2]

## ANALYSIS

This is a diversity case. And so state law governs here. *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S. Ct. 817 (1938). But which state's law governs? Plaintiffs assert that the Court should apply New Jersey law to its claims and Defendant argues that the Court should apply Tennessee law as written in the contract. For starters, the "[c]hoice-of-law analysis in a diversity action is governed by the law of the state where the federal court sits." *In re Air Crash Disaster*, 86 F.3d 498, 540-41 (6th Cir. 1996) (*citing Klaxton Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020 (1941)). The forum state is Tennessee, so the Court looks to Tennessee choice-of-law rules to lead to the answer to which state's law applies.

The argument here arises from the choice-of-law provision in the employment contracts between Plaintiffs and Defendant. That provision states: "this agreement, including any and all claims or disputes arising out of, in connection with, or relating to this Agreement, or the transaction or relationship between the parties contemplated and established by this Agreement, shall be governed and interpreted by the laws of the State of Tennessee, without regard to the choice-of-law rules of that State or any other jurisdiction." (ECF No 48-1, PageID 61.)

---

[2] Plaintiffs do not mention the contracts between the parties in the Complaint. But Plaintiffs refer to their relationship with Hub Group, and the New Jersey court, which had the contracts as part of the record before it, acknowledged that the contracts governed that relationship and this litigation. For these reasons, the Court considers the contracts here.

3

Tennessee law honors a contractual choice-of-law provision when (1) it was executed in good faith, (2) "the jurisdiction whose law is to govern . . . bear[s] a material connection to the parties' business," (3) the choice of law is reasonable and not "merely a sham or subterfuge," and (4) the law of the chosen jurisdiction is not "contrary to a fundamental policy of a state which possesses a materially greater interest and whose law would otherwise govern." *Yang Ming Marine Transp. Corp. v. Intermodal Cartage Co.*, 685 F. Supp. 2d 771, 780 (W.D. Tenn. 2010) (quotation marks omitted) (citing *Goodwin Bros. Leasing, Inc. v. H & B, Inc.*, 597 S.W.2d 303, 306–07 (Tenn. 1980), and *Messer Griesheim Indus., Inc. v. Cryotech of Kingsport, Inc.*, 131 S.W.3d 457, 474–75 (Tenn. Ct. App. 2003)).

Plaintiffs do not argue bad faith or that the provision is a "sham or subterfuge." Instead, the parties dispute the second and fourth elements. The Court will therefore turn to whether there is a "material connection" between Tennessee and the parties' business and whether New Jersey has a "fundamental policy" that would be violated and "possesses a materially greater interest" in the dispute than Tennessee.

**I.      Material Connection**

The parties dispute whether Tennessee has "a material connection to the parties' business." *Yang Ming Marine*, 685 F. Supp. 2d at 780 (quotation marks omitted). Plaintiffs emphasize that the contracts relate to New Jersey workers and who worked in and around New Jersey, not Tennessee. (ECF No. 51 at PageID 187–89.) And they note that Hub Group has a Tennessee facility but that its principal place of business is in Illinois, its state of incorporation is Delaware, and that it has facilities in 21 other states throughout the country. (ECF No. 51 at PageID 188, 183.) Finally, they rely on *Robles v. Comtrak Logistics, Inc.*, No. 15-02228, 2016

4

WL 11528831 (W.D. Tenn. July 19, 2016),³ which was a suit brought by California drivers under California law, in which that court ruled that Hub Group lacked a material connection to Tennessee for similar reasons as Plaintiffs argue here. *See Robles*, 2016 WL 11528831, at *3 (citations omitted).

But Hub Group argues that its connections to Tennessee are material and that *Robles* is not a proper comparator. By way of example, the district court in *Robles* noted that "Defendants represent they have some 'operations' in Tennessee but there is no demonstrated connection between those operations and this case." *Id.* at *2–3. But its analysis does not mention specifics about the Tennessee operations which are now before this Court. For instance, before Hub Group acquired Comtrak, Comtrak was headquartered in Tennessee. (ECF No. 48-1 at PageID 66–68; ECF No. 52-1 at PageID 459.) *Compare First Fid. Cap. Mkts., Inc. v. Reliant Bank*, No. 3:17-cv-01080, 2020 WL 514577, at *3 (M.D. Tenn. Jan. 31, 2020) (finding a material connection where a company's former headquarters were in the choice-of-law state), *with Robles,* 2016 WL 11528831, at *3 (explaining that "[n]one of the parties is a domiciliary, resident, or citizen of Tennessee" and weighing that against a material connection). In fact, Plaintiff Andujar first entered a business relationship with Tennessee-based Comtrak and was subject to a Tennessee choice-of-law provision like the one Hub Group now uses.⁴ (ECF No. 52 at PageID 451–52.)

---

³ Defendant Comtrak Logistics ("Comtrak") in the *Robles* case is the same party as Defendant Hub Group in this case; the company changed its name. *See Robles*, 2016 WL 11528831, at *1.
⁴ Certainly businesses may give up some state-specific protections when they incorporate in a different state, merge with another company, or otherwise restructure, but no longer being able to enforce contractual choice-of-law provisions is different. This is most obvious here, where the choice-of-law provision at issue has remained the same throughout Plaintiff Andujar's continuous relationship with Comtrak-turned-Hub Group. The Court sees no reason that Hub Group must forfeit the Tennessee choice-of-law provision it and its predecessor relied on in business relationships that began when the company was still a resident of Tennessee.

And among the three facilities it operates in Tennessee are two intermodal terminals in Memphis, one of which is "one of the Company's flagship facilities" that it "inherited" in the Comtrak purchase. (ECF No. 52 at PageID 451.) At those intermodal facilities in Memphis, Hub Group "and its affiliated entities" "host 106 drivers and 9 office employees," and at the consolidation and fulfillment center, "more than 165 supervisors and other workers service Hub Group clients."[5] (ECF No. 48-3 at PageID 79–80.) *See Friendship Home Healthcare, Inc. v. Procura, LLC*, No. 3:09-0016, 2010 WL 500427, at *3–4 (M.D. Tenn. Feb. 5, 2010) (finding a material connection when a party had offices and employees in the state). In response, Plaintiffs do not dispute Hub Group's claim but adds that it is "a nationwide company" that, "according to its own website has over 50 terminals, consolidation & fulfillment facilities, offices, and other facilities in 21 different states." (ECF No. 51 at PageID 183.) But just because Hub Group has facilities elsewhere does not negate its Tennessee connection.

What is more, in the *Robles* case, the court found no "demonstrated connection" between the defendants' Tennessee operations and the transactions in question. *Robles*, 2016 WL 11528831, at *3. But here, Hub Group executed many contracts at issue in Tennessee, connecting the transactions with Plaintiffs to the state. (ECF No. 48-1 at PageID 66–68.) *See EPAC Techs., Inc. v. HarperCollins Christian Publ'g, Inc.*, 810 F. App'x 389, 400 (6th Cir. 2020) (finding a material connection where one party negotiated and signed the agreement in the

---

[5] Although these representations about Hub Group's facilities and employees in Tennessee come from an affidavit, the Court considers it on this motion to dismiss because Plaintiffs do not dispute that Hub Group has Tennessee operations. (*See* ECF No. 51 at PageID 183 (Plaintiffs' brief in opposition to the motion to dismiss arguing that Hub Group is "a nationwide company" but not challenging that it has facilities in Tennessee).) Thus, even if the affidavit "convert[s]" the motion to dismiss into one for summary judgment, *Watermark Senior Living*, 905 F.3d at 425–26, there is "no genuine dispute as to any material fact" and Hub Group is entitled to the application of Tennessee law "as a matter of law," *see* Fed. R. Civ. P. 56.

choice-of-law state).  For its contracts with Plaintiff Batista in 2018 and 2020, a Hub Group representative in Memphis, Tennessee signed on behalf of the company.  (ECF Nos. 52-1 at PageID 460; 52-3 at PageID 510–526 (2018 contract); ECF No. 10-4 at PageID 223–72 (2020 contract).)  As for Plaintiff Andujar, over the ten years that he worked for either Comtrak or Hub Group, the company signed at least one of his four contracts in Memphis, Tennessee, including the one in 2019.  (ECF Nos. 52-1 at PageID 460; 52-2 at PageID 462–509.)

Hub Group's arguments are persuasive and address facts which this Court considers relevant, even though the court in *Robles* did not rely on them in its analysis.  Hub Group acquired Comtrak, which was headquartered in Tennessee.  (ECF No. 48-1 at PageID 66–68.)  Hub Group still conducts significant business in Tennessee.  (ECF No. 48-3 at PageID 79–80.)  And Hub Group executed most of the contracts at issue in Tennessee.  (*See* ECF Nos. 52-1 at PageID 460; 52-2 at PageID 462–509; 52-3 at PageID 510–526.)  The Court thus finds that there is a material connection to Tennessee, and Tennessee law will uphold the choice-of-law provision unless doing so violates fundamental New Jersey policy and New Jersey's interests are materially greater than Tennessee's.  The Court discusses these issues next.

**II.     Law of the Chosen Jurisdiction**

As noted above, Tennessee honors a contractual choice-of-law provision when the chosen law is not "contrary to a fundamental policy of a state which possesses a materially greater interest and whose law would otherwise govern."  *Yang Ming Marine Transp. Corp. v. Intermodal Cartage Co.*, 685 F. Supp. 2d 771, 780 (W.D. Tenn. 2010) (quotation marks omitted).  The parties both suggest that, if the choice-of-law provision were not honored, New Jersey law would apply.  And for purposes of this motion, the Court assumes, without deciding, that New Jersey's worker classification system is a fundamental public policy of the state and

that Tennessee law violates it. The only remaining question therefore is whether New Jersey has a materially greater interest than Tennessee. And if not, the choice-of-law provision favoring Tennessee will apply.

Plaintiffs cite hundreds of pages on New Jersey policy to show how significant New Jersey's interest in worker classification is.[6] (*See generally* ECF No. 51; *see* ECF No. 51 at PageID 203–04 (arguing that Plaintiffs have "clearly" shown and "adduced" evidence that New Jersey "had a materially greater interest in the alleged misclassification of" truckers).) And these supplemental materials do show why the Court should consider the issue a fundamental policy in New Jersey. (*See id.*) But those cited materials fail to explain why New Jersey's interest in worker classification *is materially greater than* Tennessee's. *See Lubinski v. Hub Grp. Trucking, Inc.*, 690 Fed. Appx. 377, 379 (6th Cir. June 8, 2017) ("Lubinski offers nothing of substance to support his claim that Illinois has a 'materially greater interest' in the classification of employees as independent contractors (or vice versa) than would Tennessee. This claim fails.").

And in fact, Plaintiffs likely could not make such a showing in this case. The Court agrees with Hub Group that Tennessee's own approach to worker classification reflects some of the same policy interests as New Jersey's, even though Tennessee weighs those interests differently and comes to a different outcome. Just because New Jersey's approach to paying workers and respecting parties' freedom to contract is more worker-friendly than Tennessee's does not mean its interests are "materially greater" than Tennessee's interests in addressing these

---

[6] Some of those materials, like the news articles and explanations of the different tests for employee classification, are not proper for consideration on a motion to dismiss, so the Court ignores them. (*Id.*) *See Elec. Merch. Sys. LLC v. Gaal*, 58 F.4th at 883 (noting that a court is generally restricted to the complaint but may consider "public records" on a motion to dismiss). Others, such as the legislative history documents and executive orders, however, are part of the "public record," and the Court considers those documents here. *See id.*

same policy considerations. *See Tele-Save Merchandising Co. v. Consumers Distributing Co.*, 814 F.2d 1120, 1123 (6th Cir. 1987) (noting that the court would not apply Ohio law "merely because a different result would be reached under" the law chosen in the contract).  And so, because Plaintiffs have not shown that New Jersey has a materially greater interest than Tennessee, the Court will uphold the challenged choice-of-law provision and apply Tennessee law to the dispute.

### III.     Enforceability

Lastly, Plaintiffs challenge the enforceability of the choice-of-law provision, arguing that it waives the non-waivable wage and labor laws of New Jersey.  But parties may enter a choice-of-law provision without waiving a non-waivable law.  *See Banek, Inc. v. Yogurt Ventures U.S.A., Inc.*, 6 F.3d 357, 360 (6th Cir. 1993) ("Providing that waivers and releases are void is not equivalent to voiding choice of law provisions."); *see also Lubinski v. Hub Grp. Trucking, Inc.*, 690 Fed. Appx. 377, 379 (6th Cir. June 8, 2017) (finding a choice-of-law provision did not waive certain unwaivable wage and labor laws in Illinois).  In fact, "[c]hoosing governing rights is different that waiving all rights," and a party can "elect[] to have his rights be defined and governed by Tennessee law." *Lubinski v. Hub Grp. Trucking, Inc.*, 690 Fed. Appx. 377, 379 (6th Cir. June 8, 2017) (quoting the lower court and noting that the analysis "is both a reasonable assessment and consistent with the law").  And "[t]he Sixth Circuit has also rejected the argument that an explicit non-waiver provision in a statute of one state necessarily means that the application of any other state's law would be against a fundamental public policy of the other state." *Lubinski*, 2015 WL 10732716, at *4.  The Court therefore sees no grounds for finding the choice-of-law provision unenforceable.

**CONCLUSION**

The choice-of-law provision in the contracts between the parties bears a material connection to Tennessee and does not violate the fundamental public policy of a state with a materially greater interest. According to Tennessee law therefore, the Court will uphold the choice of law provision and apply Tennessee law. As the parties acknowledged, because Tennessee law does not recognize New Jersey statutory claims, Plaintiffs' claims here are not cognizable.

For the reasons above, the Court **GRANTS** Hub Group's motion to dismiss.

**SO ORDERED**, this 13th day of February, 2025.

                                                s/Thomas L. Parker
                                                THOMAS L. PARKER
                                                UNITED STATES DISTRICT JUDGE